*Exhibit A*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ALACRITECH, INC., *Plaintiff*, v. TIER 3, INC., SAVVIS COMMUNICATIONS CORP., CENTURYLINK COMMUNICATIONS, LLC, *Defendants*. | Civil Action No. 2:16-cv-693-JRG JURY TRIAL DEMANDED |

**PLAINTIFF ALACRITECH'S RESPONSE IN OPPOSITION
TO THE CENTURYLINK DEFENDANTS' MOTION TO DISMISS
INDIRECT INFRINGEMENT CLAIMS PURSUANT TO RULE 12(B)(6)**

## I.   INTRODUCTION

Defendants Tier 3, Inc., Savvis Communications Corp., and CenturyLink Communications LLC (collectively "CenturyLink") assert three bases for dismissal of Alacritech's indirect infringement claims. None of CenturyLink's arguments warrants dismissal at this early pleading stage.

*First*, CenturyLink urges the Court to dismiss Alacritech's "pre-suit" indirect infringement claims because Alacritech does not allege that CenturyLink had knowledge of Alacritech's asserted network acceleration technology patents, as required to plead indirect infringement, prior to the filing and service of the original complaint. But CenturyLink does not dispute that Alacritech has explicitly and sufficiently alleged that CenturyLink has known of Alacritech's asserted patents since at least the filing and service of the original complaint in this action. As this Court has repeatedly found, this allegation is enough to allege the knowledge

required to state a claim for indirect infringement. The law neither requires nor permits the temporal parsing of adequately-pleaded indirect infringement claims CenturyLink seeks.

*Second*, CenturyLink contends that Alacritech has not alleged any specific intent to induce infringement and therefore fails to state a claim for induced infringement, dismissing Alacritech's allegations as "legal conclusions" and "attorney argument" about "universal business practices" and "generic activities." In fact, relying in part on CenturyLink's own marketing that is cited in both the original and first amended complaints, Alacritech alleges that CenturyLink offers "colocation services" to its data center customers using accused instrumentalities that perform infringing activities as their default process. CenturyLink's specific intent to induce infringement of Alacritech's asserted patents is manifested by CenturyLink's procurement, set-up, and maintenance of these colocation accused instrumentalities on behalf of its customers and its client support and optional services. Alacritech has alleged specific intent in greater detail than courts typically require and it has sufficiently pleaded specific intent to withstand CenturyLink's motion to dismiss.

*Third*, CenturyLink contends Alacritech has failed to allege that the accused instrumentalities have no substantial non-infringing uses, requiring dismissal of its contributory infringement claim. But unlike the instances of courts dismissing contributory infringement claims cited by CenturyLink—some of which involved pleadings that disclosed on their face substantial non-infringing uses—Alacritech has alleged that the accused instrumentalities are not staple commodities; rather, they contain different combinations of specialized hardware and software components, each assembled in a specific fashion and specially-designed to infringe. This is sufficient to allege contributory infringement.

Thus, CenturyLink's motion to dismiss should be denied in its entirety. To the extent the Court grants any part of CenturyLink's motion, however, it should do so without prejudice and afford Alacritech leave to amend.

## II.     RELEVANT FACTUAL BACKGROUND

Alacritech is a networking technology company founded in 1997. *See* Dkt. No. 29 (FAC) ¶12. Alacritech owns all rights, title and interest in U.S. Patent Nos. 7,124,205; 7,237,036; 7,337,241; 7,673,072; 7,945,699; 8,131,880; 8,805,948; and 9,055,104 (collectively, the "Asserted Patents") directed to fundamental network acceleration technologies. *Id.* ¶¶7, 14. These technologies are critical to modern network computing, dramatically increasing the speed and efficiency with which data is transferred and stored. *Id*. Without the benefit of Alacritech's groundbreaking inventions, modern computing networks (especially large-scale and/or high-performance networks) would be significantly slower and less efficient (and, therefore, more expensive and less useful) than they are today. *Id*. ¶29.

Defendants Tier 3, Inc., Savvis Communications Corp., and CenturyLink Communications LLC share a common parent holding company, CenturyLink, Inc. FAC ¶5.[1] CenturyLink infringes the Asserted Patents through, among other things, the operation of its network of data centers, and services associated with its data centers, including Savvis's colocation services. *Id*. ¶¶31-33. Without the benefit of Alacritech's patented technologies, CenturyLink's infringing data centers and colocation services would cost substantially more

---

[1] As in this motion, the First Amended Complaint collectively refers to defendants Tier 3, Savvis, and CenturyLink Communications as "CenturyLink." *See* FAC ¶5. Referring to these related defendants collectively in this manner does not render Alacritech's pleading deficient. *Cf. ZiiLabs Inc., Ltd. v. Samsung Elecs. Co. Ltd.*, No. 2:14-CV-203, 2015 WL 1456448, at *3 (E.D. Tex., Mar. 30, 2015) (denying motion to dismiss induced infringement claim accusing unrelated defendants through use of "the umbrella term 'Defendants'").

and/or suffer a significant degradation in performance, hurting CenturyLink's business as a result. *Id.* ¶35.

CenturyLink indirectly infringes the Asserted Patents by providing, among other things, colocation services to its customers.[2] *Id.* ¶33 (citing "Savvis IT Infrastructure – Your SaaS Managed Hosting IT Services Provider," *available at* http://docplayer.net/3212260-Savvis-itinfrastructure-your-saas-managed-hosting-it-services-provider.html). CenturyLink describes its "colocation" umbrella of services on its website in detail,[3] including simple and fully-managed IT infrastructure hosting of customer-provided (or CenturyLink-procured) cabinet and caged space, power and cooling, redundant systems, and cross connects to a variety of network providers, interconnection to worldwide data centers, and a variety of connectivity options, including Internet bandwidth, Multiprotocol Label Switching (MPLS), Virtual Private Network (VPN), Ethernet Virtual Private Line (EVPL), Ethernet Private Line (EPL) and Private Line Services (PLS).  *Id.* ¶31 (citing "Savvis Data Center Locations," *available at* http://cloudandcolocation.com/colocation-provider/savvis/; see, e.g., description of Fort Worth Data Center #1).

CenturyLink describes procuring, setting up and maintaining this infrastructure through continuous management of customer and data center environments down to the rack level, client support and optional services, including remote hands Gold Support, and infrastructure as a

---

[2] Colocation is commonly understood in the networking industry to refer to a data center facility in which a business can rent space for servers and other computing hardware.  Typically, colocation provides the building, cooling, power, bandwidth and physical security while the customer provides servers and storage.  *See* https://en.wikipedia.org/wiki/Colocation_centre.

[3] Although some of the details recited in this opposition are not expressly alleged in the body of the First Amended Complaint, they appear on the websites referenced in the First Amended Complaint and may therefore be considered in ruling on CenturyLink's motion to dismiss.  *See, e.g.*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("A court is permitted…to rely on 'documents incorporated into the complaint by reference[.]'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

service (IaaS) offering called a virtual data center service to offer businesses a simplified platform for complex hybrid cloud solutions. *Id.* Both CenturyLink and industry third parties tout the enormity of this indirectly infringing part of CenturyLink's business: "Recognized by Frost & Sullivan as [the] number 2 retail colocation provider, Savvis global footprint includes 55 state of the art data centers across North America (44), Europe (6), and Asia (5) with over 2 million square feet of raised floor space offering. The company serves more than 4,000 customer[s] including 40 percent of the top 100 companies in the Fortune 500 helping to reduce capital expense, improve service levels and exploit the latest advances in cloud computing." *Id*. ¶33 (citing "Savvis IT Infrastructure – Your SaaS Managed Hosting IT Services Provider," *available at* http://docplayer.net/3212260-Savvis-itinfrastructure-your-saas-managed-hosting-it-services-provider.html). These CenturyLink "colocation" accused instrumentalities are among those that Alacritech has alleged indirectly infringe the Asserted Patents in the First Amended Complaint.

In fact, Alacritech alleges that the accused instrumentalities contain combinations of specialized hardware and software components, assembled in a specific fashion to provide the indirectly infringing services so that, in the end, the accused instrumentalities can perform one or more of at least the following infringing activities: Receive Segment Coalescing ("RSC"), Large Send Offload ("LSO"), the InfiniBand protocol, or the RDMA over Converged Ethernet ("RoCE") protocol. ¶¶40, 53, 65, 78, 91, 104, 117, 130. Significantly, these infringing activities are performed by CenturyLink's specialized hardware and software components *as the default process* after the accused instrumentalities have been assembled. *See* FAC ¶¶40, 53, 65, 78, 91, 104, 117, 130.

Alacritech filed its original Complaint against CenturyLink, Inc. on June 30, 2016. Exh. A, Paunovich Decl. ¶2.  The Summons and original Complaint were served on CenturyLink, Inc. on or about July 7, 2016.  *Id.*  Shortly thereafter, CenturyLink's counsel contacted Alacritech's counsel to request that Alacritech dismiss CenturyLink, Inc. from the case without prejudice and substitute Tier 3, Inc., Savvis Communications Corp., and CenturyLink Communications LLC in a First Amended Complaint because, in CenturyLink's view, these entities were the proper entities to accuse of infringement based on the allegations in the original Complaint.  *Id.* ¶3.  Alacritech agreed and prepared a draft First Amended Complaint against Tier 3, Savvis and CenturyLink Communications, in which the material infringement allegations are essentially identical to those in the original Complaint, and provided the First Amended Complaint to their counsel a number of days before filing it.  *Id.*  Counsel for these entities asked Alacritech to make certain revisions to the First Amended Complaint and agreed to accept service on their behalf once Alacritech filed it electronically with the Court.  *Id.*  Alacritech filed the First Amended Complaint on August 26, 2016.  *Id.* ¶4.  It is beyond dispute that CenturyLink had notice of Alacritech's allegations since at least as of the filing and service of the original Complaint.

### III.   LEGAL STANDARD

"In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Atwater Partners of Texas LLC v. AT&T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *1 (E.D. Tex. Mar. 18, 2011) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)).  The central issue is "whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007).  As such, a plaintiff is not required to "prove itself" at this stage.

*InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-cv-414, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012).

IV. **ARGUMENT**

A. **The Court Should Not Dismiss Alacritech's Indirect Infringement Claims As To "Pre-Suit" Infringement Because Alacritech Sufficiently Alleges CenturyLink's Knowledge Of Alacritech's Asserted Patents**

The First Amended Complaint clearly alleges CenturyLink's knowledge of Alacritech's patents "based on at least the filing and service of the Original Complaint." FAC ¶42; *see also id.* ¶¶54, 67, 80, 93, 106, 119, 132. CenturyLink does not and cannot dispute that these allegations are sufficient to allege knowledge. Instead, it argues that because Alacritech does not allege that CenturyLink had knowledge of the patents *prior* to the lawsuit, this Court should therefore dismiss Alacritech's "*pre-suit* indirect infringement claims." Mot. at 4-5 (emphasis in original). The Court should decline to parse Alacritech's indirect infringement claims in the manner CenturyLink urges.

"Pre-suit" and "post-filing" indirect infringement are not separate claims for purposes of a motion to dismiss. Thus, as this Court held in *Lochner Technologies LLC v. AT Labs Inc.*, No. 2:11-cv-242, 2012 WL 2595288, at *3 (E.D. Tex. Jul. 5, 2012) (Gilstrap, J.), a patentee's failure to allege pre-suit knowledge of asserted patents "is not a basis to dismiss…indirect infringement claims" where, as here, "it cannot be disputed that [the patentee] *does* sufficiently plead that the Moving Defendant[] had knowledge of the asserted patent for at least some time during the infringing period." *Id.* Accordingly, the Court rejected the *Lochner* defendants' argument (like CenturyLink's argument here) that there was a "'pleading deficiency at least with respect to any allegedly infringing activities that pre-date the filing of the Original Complaint'" and denied a motion to dismiss on this ground. *Id.*; *accord Cellular Comms. Equip. LLC v. HTC Corp.*, No.

- 7 -

6:13-cv-507, Dkt. No. 373, at 8 (E.D. Tex. Mar. 27, 2015) (Davis, J.) (denying motion to dismiss based on failure to allege "pre-suit" knowledge and citing *Lochner*); *Brain Damage Films*, 2012 WL 3283371, at \*3-4 (E.D. Tex. Aug. 10, 2012) (Gilstrap, J.) (same).

Indeed, courts in this District have routinely declined to dismiss indirect infringement claims where the patentee alleges knowledge of the asserted patents arising from the filing and service of the complaint, as Alacritech has done here and as CenturyLink effectively concedes. *See, e.g.*, *InMotion Imagery Techs. LLC v. Imation Corp.*, No. 2:12-cv-298, 2013 WL 1279055, at \*5-6 (E.D. Tex. Mar. 26, 2013) (Gilstrap, J.) (allegation that "the filing of this lawsuit provides notice of the asserted patents…provides a sufficient basis to allege the knowledge and intent necessary to sustain allegations of indirect infringement"); *Motorola Mobility, Inc. v. Tivo Inc.*, No. 5:11-cv-053, 2012 WL 12840340, at \*3 (E.D. Tex. Nov. 30, 2012) (denying motion to dismiss because filing lawsuit provided sufficient basis to allege knowledge); *Tierra Intelectual Borinquen, Inc. v. Asus Computer Int'l, Inc.*, No. 2:13-cv-44, 2014 U.S. Dist. LEXIS 38570, at \*5-6 (E.D. Tex. Mar. 24, 2014) (denying motion to dismiss because complaint alleged knowledge from filing and pre-suit knowledge requirement would lead to "absurd results"); *Achates Reference Pub. Inc. v. Symantec Corp.*, No. 2:11-cv-294, 2013 WL 693955, at \*2 (E.D. Tex. Jan. 10, 2013) (denying motion to dismiss because complaint alleged knowledge from filing and "there is no requirement to allege pre-suit knowledge"), *report and recommendation adopted* 2013 WL 693885 (E.D. Tex. Feb. 26, 2013).

CenturyLink cites two cases in support of its contention that the Court can and should dismiss indirect infringement claims with respect to "pre-suit" infringement. Mot. at 5 (citing *Bush Seismic Techs. LLC v. American Gem Society*, No. 2:14-cv-1809 (E.D. Tex. Apr. 13, 2016)

and *Babbage Holdings, LLC v. Activision Blizzard, Inc.*, No. 2-13-cv-750, 2014 WL 2115616 (E.D. Tex. May 15, 2014)). But neither case supports its novel theory.

In *Bush Seismic*, this Court dismissed indirect infringement claims in an original complaint because there were no credible allegations of pre-suit knowledge *and* no allegations that the defendants indirectly infringed post-filing with knowledge of the asserted patents from the filing and service of the complaint because the patentee "could not have had a good faith basis to allege…induced infringement based on post-suit conduct that had not yet occurred." Declaration of Stephen Morton, Dkt. No. 44 ("Morton Decl.") Exh. 1 at 5. This Court explained: "A patentee should not prospectively allege post-filing conduct in an original complaint. Rather, if claims for…induced infringement arise after the lawsuit is filed, the patentee should amend its complaint to include such claims." *Id.* Thus, there were *no* credible allegations of knowledge—pre-suit or post-suit—at all in *Bush Seismic*, and this Court accordingly dismissed the patentee's indirect infringement claim without prejudice to permit later amendment. In contrast, CenturyLink here seeks to dismiss a portion of an indirect infringement claim in Alacritech's First Amended Complaint, where it was proper for Alacritech to allege knowledge based on the filing and service of the original complaint, which had already occurred.

Similarly, in *Babbage Holdings*, there were no allegations of pre-suit knowledge of the asserted patents *and* no plausible allegations of post-filing indirect infringement with knowledge based on the filing and service of the complaint; in that case, the plaintiff's patent expired less than one week after he filed the complaint and *before* the summons and complaint were served. *Babbage Holdings*, 2014 WL 2115616, at *1-2. The defendants in *Babbage Holdings* thus had no opportunity to knowingly infringe. Thus, this Court dismissed that plaintiff's indirect

infringement claim in its totality. *See id.* In contrast, none of the asserted patents in this case have expired and they are all enforceable against post-filing indirect infringement.

Unlike in *Bush Seismic* and *Babbage Holdings*, "it cannot be disputed that [Alacritech] *does* sufficiently plead that [CenturyLink] had knowledge of the asserted patent for at least some time during the infringing period" and, thus, an absence of allegations concerning pre-suit knowledge of the asserted patents "is not a basis to dismiss…indirect infringement claims." *Lochner*, 2012 WL 2595288, at *3. CenturyLink's motion to dismiss on this ground should be denied.

### B. Alacritech Sufficiently Alleges That CenturyLink Had Specific Intent To Induce Infringement

CenturyLink next argues that this Court should dismiss Alacritech's induced infringement claim for failure to allege specific intent. *See* Mot. at 5-7. In fact, the First Amended Complaint's specific intent allegations are more than sufficient to state a claim for induced infringement at the pleading stage.

"[L]iability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, --- U.S. ----, 135 S. Ct. 1920, 1926 (2015) (quoting *Global Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). "Knowledge of the patent can be shown directly or through evidence of willful blindness on the part of the defendant." *Script Security Solutions L.L.C. v. Amazon.com, Inc.*, No. 2:15-CV-1030, 2016 WL 1055827, at *6 (E.D. Tex. Mar. 17, 2016). However, "it is not necessary to provide detailed factual support for each and every element of inducement" at the pleading stage. *Brain Damage Films*, 2012 WL 3283371, at *3 (citing *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012)); *accord Motorola Mobility, Inc. v. Tivo Inc.*, No. 5:11-cv-053, 2012 WL 12840340, at *3 (E.D.

Tex. Nov. 30, 2012) (Gilstrap, J.). This holds particularly true for pleading specific intent. *Cf*. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") Specific intent means only that the defendant "intended for its customers to infringe the asserted patents." *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No 2:13-cv-1112, 2015 WL 1431946, at *2-4 (E.D. Tex. Mar. 30, 2015) (denying defendants' motion to dismiss) (Gilstrap, J.). Thus, in *Brain Damage Films*, 2012 WL 12840340, at *3, and *Motorola Mobility*, 2012 WL 3283371, at *3, this Court denied the defendants' motions to dismiss even though the plaintiffs did not "explicitly plead facts" to show specific intent.

  Here, Alacritech alleges facts showing that CenturyLink procured, set up, and maintained products and services for customers as part of its "colocation" umbrella of services to practice the claimed inventions, which permits the inference that it intended its customers to infringe the patents. *Id*. ¶33 (citing "Savvis IT Infrastructure – Your SaaS Managed Hosting IT Services Provider," *available at* http://docplayer.net/3212260-Savvis-itinfrastructure-your-saas-managed-hosting-it-services-provider.html). For example, Alacritech alleges that CenturyLink provides everything from simple to fully-managed IT infrastructure hosting of customer-provided (or CenturyLink-procured) cabinet and caged space, power and cooling, redundant systems, and cross connects and interconnections. *Id*. ¶31 (citing "Savvis Data Center Locations – Fort Worth Data Center #1," *available at* http://cloudandcolocation.com/colocation-provider/savvis/). Alacritech further alleges that CenturyLink provides continuous management of customer and data center environments down to the rack level, client support and optional services, including remote hands Gold Support, and IaaS virtual data center services. *Id*. For each Asserted Patent, Alacritech alleges that CenturyLink makes, uses, or sells to its customers these colocation services that infringe by nature of their performing at least the accused RSC functionality, LSO

functionality, InfiniBand and/or RoCE protocols. FAC ¶¶43, 55, 68, 81, 94, 107, 120, 133. And, as demonstrated above, there is no dispute that Alacritech has alleged knowledge of the asserted patents at least as of the filing and service of the original complaint and, thus, that the acts it induced constituted patent infringement.

Comparable allegations have been found sufficient to plead the specific intent to induce infringement. *See, e.g.*, *Erfindergemeinshaft Uropep GbR v. Eli Lilly & Co.*, No. 2:14-CV-1202, 2016 WL 1643315, at *4-6 (E.D. Tex. Apr. 26, 2016) (allegations that defendant provided "instructions, documentation, and/or other information" regarding infringing use of product sufficient to plead specific intent to induce infringement); *BMC Software, Inc. v. ServiceNow, Inc.*, No. 2:14-CV-903, 2015 WL 2379333, at *3 (E.D. Tex. May 18, 2015) (Gilstrap, J.) (denying motion to dismiss where defendant alleged plaintiff's "allegations are little more than conclusory statements that [defendant] is a business that disseminates information regarding products that happen to now be accused of infringement"); *Achates Reference Pub., Inc. v. Symantec Corp.*, No. 2:11-CV-294, 2013 WL 693955, at *3 (E.D. Tex. Jan. 10, 2013) (complaint plausibly alleged defendant induced infringement by its customers where it alleged defendant sold software products containing mandatory activation component and knew its use infringed asserted patents), *report and recommendation adopted* 2013 WL 693855 (Feb. 26, 2013).

CenturyLink contends this Court should ignore these allegations on the basis that they are "generic activities" and "universal business practices" that do not reflect specific intent. *See* Mot. at 7. To the contrary, Alacritech's allegations show that CenturyLink's business model is to help its customers utilize the infringing networking technologies sold to them (which operate by default when the accused instrumentalities are assembled, *see* FAC ¶¶40, 53, 65, 78, 91, 104, 117, 130) as efficiently as possible. And, even to the extent Alacritech's allegations do describe

"generic activities" or "universal business practices," CenturyLink cites no authority supporting its supposition that such allegations are insufficient to plausibly allege specific intent. *Contra BMC Software*, 2015 WL 2379333, at *3 (denying motion to dismiss induced infringement where plaintiff argued specific intent allegations "stat[ed] routine business practices"). Alacritech has sufficiently pleaded specific intent at the pleading stage and this Court should deny CenturyLink's motion to dismiss the induced infringement claim on this basis.

### C. Alacritech Sufficiently Alleges That CenturyLink's Accused Instrumentalities Have No Substantial Non-Infringing Uses

Finally, CenturyLink argues that this Court should dismiss Alacritech's contributory infringement claim for failure to allege that the accused instrumentalities have no substantial non-infringing uses. Mot. at 8-10. This argument fails because Alacritech's allegations, taken as a whole, allow for inferences that the accused instrumentalities are not staple articles or commodities of commerce, and furthermore were specially-designed or adapted to perform the infringing activities.

The "no substantial non-infringing uses" requirement simply requires a plaintiff to allege that the infringing material or apparatus is material to practicing the invention and has no substantial non-infringing uses. *In re Bill of Lading*, 681 F.3d at 1337. A substantial non-infringing use is any that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Id.* This Court has held that if the pleadings do not indicate that there *is* a substantial non-infringing use, then an allegation that the accused instrumentality is not a staple article or commodity of commerce will satisfy the requirements. *Imation*, 2013 WL 1279055, at *6.

Here, Alacritech alleges that each of the accused instrumentalities is not a staple article or commodity of commerce. FAC ¶¶44, 56, 69, 82, 95, 108, 121, 134. Moreover, Alacritech's

allegations track those from *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-cv-911, 2015 WL 5786501, at *4 (E.D. Tex. Sept. 30, 2015) (Gilstrap, J.), which this Court held to "permit the reasonable inference that [defendants'] products lack substantial non-infringing uses because they are designed for the sole purpose of performing the claimed functionality." *See id.* at *4. The plaintiff in *Core Wireless* alleged:

> Defendants install, configure, and sell LG Android Products with distinct and separate hardware and/or software components especially made or especially adapted to practice the invention claimed in the '476 patent. That hardware and/or software is a material part of the invention. That hardware and/or software is not a staple article or commodity of commerce because it is specifically designed to perform the claimed functionality. Any other use of that hardware and/or software would be unusual far-fetched, illusory, impractical occasional, aberrant, or experimental.

*Id.* at *3. Similarly, Alacritech's allegations for Patent No. 7,124,205 state:

> CenturyLink knows that infringing components of equipment it provides in connection with the '205 Accused Activities are especially made or especially adapted for use in the infringement of the '205 patent. The infringing components of this equipment are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of this equipment are a material part of the invention of the '205 patent. The equipment CenturyLink provides in connection with the '205 Accused Activities contains infringing components such as specialized hardware and/or software for performing infringing RSC functionality or for practicing the InfiniBand and/or RoCE protocols, which are separable from the equipment, material to practicing the '205 patent's inventions for accelerated network communications, and have no substantial non-infringing use.

FAC ¶44; *see also id.* ¶¶56, 69, 82, 95, 108, 121, 134 (similar allegations for other asserted patents). The only substantive difference is that the allegations from *Core Wireless* define substantial non-infringing use, including words like "unusual" and "far-fetched," which adds little of use to the allegation and undoubtedly would be challenged by CenturyLink as conclusory.

Alacritech's detailed allegations of the accused instrumentalities also support the inference that they were designed solely to practice the claimed inventions. Alacritech alleges that the accused instrumentalities contain combinations of specialized hardware and software components, assembled in a specific fashion so that, in the end, the accused instrumentalities can perform one or more of at least the following infringing activities: RSC functionality, LSO functionality, InfiniBand and/or RoCE protocols. *See* FAC ¶¶40, 53, 65, 78, 91, 104, 117, 130. Significantly, these infringing activities are performed by CenturyLink's specialized hardware and software components *as the default process* after the accused instrumentalities have been assembled. *Id*. It would be "impractical," "unusual," or "farfetched" to assemble such complicated and ornate accused instrumentalities and then *not* to perform one of the coveted infringing activities, especially when they are almost always set by default. *See, e.g.*, *In re Bill of Lading*, 681 F.3d at 1337.

Moreover, the complaint does not suggest a substantial non-infringing use, nor does CenturyLink raise one in its motion. Accordingly, Alacritech's allegations satisfy the "no substantial non-infringing uses" requirement and its contributory infringement claims should be allowed to proceed. *Imation*, 2013 WL 1279055, at *6.

CenturyLink cites several cases to show that this Court has granted motions to dismiss contributory infringement claims based on plaintiffs' failure to allege no substantial non-infringing uses. Mot. at 8. But the plaintiffs in those cases asserted allegations that were much weaker than Alacritech's. In *Brain Damage Films*, 2012 WL 3283371, at *4, for example, the plaintiff failed to identify the components that were part of the infringing method, unlike here where Alacritech provides more than sufficient detail of all the components and their assembly for each infringing instrumentality. *Compare id. with* FAC ¶¶40, 53, 65, 78, 91, 104, 117, 130

(describing components and assembly of the accused instrumentalities). In *Blue Spike*, the plaintiff's allegation of no substantial non-infringing use was "based solely on the product names." *Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-cv-00499, Dkt. No. 1006, at 3 (E.D. Tex. Sept. 27, 2013).[4] In contrast, Alacritech bases its claim on significant allegations including, among others, that the accused instrumentalities are not staple articles or commodities of commerce, the complex construction of the components suggests the materials were especially-designed to infringe, and almost all infringing materials perform an infringing activity *by default*. And, in the other cited cases, the plaintiffs' claims had similar defects and the allegations were much weaker than Alacritech's. *See U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366, 2013 WL 8482270, at *4 (E.D. Tex. Mar. 6, 2013) (pleading itself indicated substantial non-infringing uses); *NobelBiz, Inc. v. InsideSales.com, Inc.*, No. 6:13-cv-360, at 5 (E.D. Tex. Oct. 12, 2014) (pleading itself indicated substantial non-infringing use); *Cellular Comms.' Equip. LLC v. HTC Corp.*, No. 6:13-cv-507, at 10 (E.D. Tex. Mar. 27, 2015) (plaintiff did not identify the material components of the invention); *Clear with Computers, LLC v. Bergdorf Goodman, Inc.*, 2010 WL 3155888, at *4 (E.D. Tex. Mar. 29, 2010) (plaintiff failed to identify indirect infringement claims, infringing methods or systems, and a class of direct infringers).

### D. In The Alternative, This Court Should Grant Leave To Amend

Alacritech's allegations support a plausible claim for relief for both induced and contributory infringement of the asserted patents by CenturyLink. However, if this Court should

---

[4] CenturyLink purports to attach the cited *Blue Spike* case as Exhibit 4 to its motion. However, Exhibit 4 attached to the motion is an order pertaining to settlement. Furthermore, the only order from *Blue Spike* with a date of October 16, 2014, as cited in CenturyLink's motion, is a claim construction order. Alacritech believes CenturyLink intended to cite to page 3 of the order at Dkt. No. 1006, to which Alacritech has cited and responded.

find that the First Amended Complaint's allegations are insufficient to state a claim, Alacritech respectfully requests that this Court dismiss without prejudice and grant leave to amend. CenturyLink has not requested dismissal with prejudice or without leave to amend.

## V. CONCLUSION

Alacritech's complaint sets forth sufficient allegations of indirect infringement to give CenturyLink fair notice of the claims against them.  Together, these detailed allegations are sufficient to state plausible claims for relief.  For these reasons, this Court should deny CenturyLink's motion.  Should the Court determine that the allegations in the complaint are insufficient, Alacritech respectfully requests that this Court dismiss without prejudice and grant it leave to amend pursuant to Fed. R. Civ. P. 15.


Dated: October 3, 2016
QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/ Claude M. Stern (w/permission Andrea Fair)
Claude M. Stern
California State Bar No. 96737
*claudestern@quinnemanuel.com*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Joseph M. Paunovich
California State Bar No. 228222
*joepaunovich@quinnemanuel.com*
Jordan Brock Kaericher
California State Bar No. 265953
*jordankaericher@quinnemanuel.com*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor

>Los Angeles, CA 90017
>Telephone:  (213) 443-3000
>Facsimile:  (213) 443-3100
>
>T. John Ward, Jr.
>Texas State Bar No. 00794818
>*jw@wsfirm.com*
>Claire Abernathy Henry
>Texas State Bar No. 24053063
>*claire@wsfirm.com*
>Andrea L. Fair
>Texas State Bar No. 24078488
>*andrea@wsfirm.com*
>WARD, SMITH & HILL, PLLC
>1507 Bill Owens Parkway
>Longview, Texas 75604
>Telephone:  (903) 757-6400
>Facsimile:  (903) 757-2323
>
>Attorneys for ALACRITECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on this the 3rd day of October, 2016.

>/s/ Andrea Fair