# Exhibit H

APR 2 4 2008

Doc Code: AP.PRE.REQ

Customized Form PTO/SB/33 (07-05)

| | | |
|---|---|---|
| **PRE-APPEAL BRIEF** **REQUEST FOR REVIEW** | Application # | 10/893,534 |
| | Confirmation # | 2395 |
| | Filing Date | July 19, 2004 |
| | First Inventor | PRYOR |
| | Art Unit | 3711 |
| | Examiner | Mendiratta, Vishu K. |
| | Docket # | P06410US02/DEJ |

Applicant requests review of the final rejection in the above-identified application. No amendments are being filed with this request.

This request is being filed with a NOTICE OF APPEAL.

The review is requested for the reason(s) stated on the attached sheet(s).

   Note:  No more than five (5) pages may be provided.

I am the Attorney of Record.

Date:    April 24, 2008

By:    Name:  Douglas E. Jackson
Registration No.:   28,518

**STITES & HARBISON PLLC**  ◆ 1199 North Fairfax St.  ◆  Suite 900  ◆  Alexandria, VA 22314
TEL: 703-739-4900  ◆  FAX: 703-739-9577  ◆  CUSTOMER NO. 00881

524LT:20116:63246:1:ALEXANDRIA

APR 2 4 2008

SN 10/893,534
Docket # P06410US02/DEJ

Remarks/Arguments for
Pre-Appeal Brief Request

## REMARKS AND ARGUMENTS IN SUPPORT OF
## PRE-APPEAL BRIEF REQUEST FOR REVIEW

In the outstanding final Office Action, the examiner has again refused to consider important functional limitations in the claims, asserting that such "only represent intended use".  However, such functional limitations are part of a "means or step plus function" limitation, so that such limitations do not represent "intended use" but are used to functionally define the invention are specifically authorized by 35 USC § 112, 6th paragraph.  Therefore, when such limitations are properly considered, the present claims are all not anticipated or made obvious over the applied art and hence are in condition for allowance.

What is claimed in both amended independent claims 9 and 21 is an invention where a board game is played.  A computer is used to <u>analyze</u> an output of a TV camera viewing the board game, and to <u>recognize</u> a relative position of at least one of the markers with respect to information on the board.  Then, when the marker is moved to a new position during the play of the game, the computer <u>recognizes</u> the new position of the marker.  As a result of the newly recognized position, the computer also is then used to <u>automatically generate</u> a sensory output, associated with the new position of the marker, which is designed (intended) to be perceived by the person(s) playing the game.

Independent claims 9 and 21 are (initially) rejected under 35 USC § 102 as being anticipated by the Hedges patent.  In particular, the examiner has stated (see final Office Action of January 24, 2008, pages 4-5), when describing the prior art Hedges patent and in response to applicant's arguments and claim changes:

> As explained in previous office action all casinos are equipped with cameras that constantly monitor in real time all movements of every casino activity on every table including identifying all game pieces and their positions.  Cameras placed in strategic locations constantly record all casino movements that are monitored.  Newly added limitations do not further add any structure to the claimed apparatus. With reference to "generating sensation" such limitations are personal reactions and not part of apparatus.
> <u>Newly added limitations in a computer means phrase only represent intended use "for analyzing", "for recognizing", etc. do not specifically</u>

claim structure that would limit the apparatus claimed.  (Emphasis not added.)

By making this last statement, the examiner has in effect refused to give any patentable weight to the "function" part of the computer "means".  Such is contrary to 35 USC § 112, 6th ¶, as well as various sections of the MPEP and long established case law.  As well appreciated, § 112, 6th ¶ specifically authorizes the use of "means or step plus function" limitations in a claim.  And when such limitations are used, it would be absurd to then ignore the "function" portion as "only representing intended use" as the examiner has done with the present claims.

With a proper appreciation that the "function" part of every means/step plus function limitation in a claim must not be ignored, it will be appreciated that independent apparatus claim 9 and independent method claim 21 both clearly and particularly differentiate from the prior art apparatus and method of the Hedges patent (and the other cited references, the Levy patent and the Karmakar patent, which have similar disclosures) where casino games, or any such live game, are (merely) monitored[1] by a TV camera and the output of the TV camera recorded to a suitable computer.  In particular, it is claimed that the apparatus of the present invention includes a computer means for performing the following specific functions (and likewise the method recites a computer performing the noted steps and functions):

a)  analyzing the output of said TV camera and recognizing from the analysis a relative position of said marker with respect to the information on said board,

b)  analyzing and then recognizing, after a movement of said marker during the play of the game which is viewed by said TV camera, a new position of said marker with respect to the information on said board, and

c)  automatically generating, after the new position of said marker is recognized, a sensory output designed to be capable of being perceived by the person, said sensory output being different from a view of said board and marker thereon and being associated with the recognized new position of said marker with respect to the information on said board.

---

[1] One convenient dictionary definition of "monitor" being:  "keep under surveillance".

No such analyzing[2] and recognizing[3] by a computer takes place in the situation described by the examiner of a casino which monitors activity with TV cameras as in the Hedges patent, the Levy patent and the Karmakar patent.  In particular, such a monitoring system does not "analyze" the TV camera output in order to "recognize" a relative position of a marker and a new position of the marker with respect to the information on the board.  The actions of "analyzing" and "recognizing" together are definitionally different from the action to "display" or even to "monitor", as would be readily recognized by those of ordinary skill in computer vision which is the standard which should be applied.  Further, and significantly, such a prior art monitoring system does not generate a "sensory output" after the new position is "recognized", where the sensory output is <u>different</u> from a view of the board or game.  Rather, the monitoring system of the Hedges patent (and the Levy patent and the Karmakar patent) described by the examiner merely displays, without any analysis or recognition, whatever is within the field of view of the TV camera.

The examiner also particularly noted that the term "generating sensation" was a "personal reaction" and hence did not limit the claimed apparatus.  Even if this were true, it is irrelevant as this is <u>not</u> what is now claimed.  What is now claimed is a computer means "for automatically generating … a sensory output designed to be capable of being perceived by a person".  It is thus made clear that it is the computer means which functions to generate this "output", and this generated output (e.g., an emitted sound or image shown in a video display) is not an intended use, but a <u>feature</u> of the claimed apparatus.

Admittedly, the phrase "designed to be capable of being perceived by the person" <u>is an intended use</u>, but even if this phrase were omitted[4] there still remains the positive functional limitation of the "means" limitation which must <u>not</u> be ignored.  And it will further be appreciated that each of the prior art monitoring systems obviously does not <u>generate</u> any such "output", as they are incapable of <u>recognizing</u> the need to

---

[2] One convenient dictionary definition of "analyze" being: "an investigation of the component parts of a whole and their relations in making up the whole".

[3] One convenient dictionary definition of "recognize" being: "be fully aware or cognizant of", which is obviously more than using a TV camera to record the activities of a board game under surveillance.

generate a sensory output and instead they merely displays the game(s) (or game board(s)) in the field of view of the TV cameras.

The examiner's rejections under 35 USC § 102 for anticipation of independent claims 9 and 21 by the Hedges patent, the Levy patent, or the Karmakar patent are all based on the presence in the references of a computer means, and thereafter the ignoring of the "functional" limitations of the claims because such limitations are "intended use". However, as evident from the above, and further from the MPEP[5], the examiner has failed to provide a *prima facie* showing of an equivalent element in each of these prior art references since "unless an element performs the identical function specified in the claim, it cannot be an equivalent for the purposes of **35 U.S.C. 112**, sixth paragraph" (see MPEP § 2183.II, quoting from the *Pennwalt* case. As further noted in the MPEP[6] [emphasis added]:

> Among the indicia that will support a conclusion that <u>one element is or is not an equivalent of another</u> are:
>
> (A) Whether the prior art element <u>performs the identical function specified in the claim in substantially the same way, and produces substantially the same results</u> as the corresponding element disclosed in the specification. Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 54 USPQ2d 1308 (Fed. Cir. 2000) ....
>
> (B) Whether a person of ordinary skill in the art would have recognized the <u>interchangeability of the element shown in the prior art for the corresponding element</u> disclosed in the specification. [Followed by numerous citations.] ...
>
> (C) Whether there are <u>insubstantial differences</u> between the prior art element and the corresponding element disclosed in the specification.
>
> (D) Whether ... <u>the prior art element performs the function specified in the claim in substantially the same manner as the function is performed by the corresponding element</u> described in the specification.

As noted above, none of the Hedges patent, the Levy patent, or the Karmakar patent disclose or teach a computer means with the above noted functions of "analyzing", "recognizing" or "generating" as specifically and functionally claimed.

---

[4] Which can be done if the examiner so desires, but it is believed that this phrase provides more definiteness and is hence desired for that reason.

[5] See §§ 2183 or 2184.II.

[6] Again see either §§ 2183 or 2184.II.

Therefore, the mere presence of a computer means is not an equivalent to the recited limitations as each cited computer means:  a) does not perform the identical function specified in the claim in substantially the same way, and does not produce substantially the same result; b) is not recognized as interchangeable with the functional computer means of the present invention; c) has substantial differences from the disclosed computer means as defined by the functional limitations; and d) does not perform the function specified in the claim in substantially the same manner as the function is performed by the corresponding element.

In view of the above, independent claims 9 and 21, as properly interpreted with their functional limitations, are neither anticipated by nor made obvious by any of the Hedges patent, the Levy patent or the Karmakar patent.  Therefore, these claims are allowable over these references; and likewise all of the remaining dependent claims are likewise allowable based on their respective dependency from one of the independent claims.

Withdrawal of the final Office Action and allowance of the application is thus solicited.