## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS MARSHALL DIVISION

| | |
|---|---|
| GESTURE TECHNOLOGY PARTNERS, LLC, <br>     Plaintiff <br> v. <br> HUAWEI DEVICE CO., LTD., <br> HUAWEI DEVICE USA, INC., <br><br>     Defendants. | **JURY TRIAL DEMANDED** <br><br> C.A. NO. 2:21-cv-00040-JRG <br><br> LEAD CONSOLIDATED CASE |
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC., <br><br>     Defendants. | C.A. NO. 2:21-cv-00041-JRG |

**PLAINTIFF GESTURE TECHNOLOGY PARTNERS, LLC'S
REPLY CLAIM CONSTRUCTION BRIEF**

Plaintiff Gesture Technology Partners, LLC ("GTP") files its reply brief.

## I.   ARGUMENT

### 1.   "means for controlling a function of said apparatus using said information"

Defendants' accusation that GTP attempts to improperly broaden the recited function rings hollow—GTP's recited function is the same language actually recited in the claim. Defendants incorrectly claim that the Federal Circuit's "rule" requires incorporation of antecedent phrases. Resp. Br. at 3 (citing *Rain Computing, Inc. v. Samsung Electronics America, Inc.*, 989 F.3d 1002 (Fed. Cir. 2021)). There is no such rule—the parties in *Rain Computing* agreed to incorporate the antecedent phrases into the recited function. *See Rain Computing*, 989 F.3d at 1007.

Defendants have also failed to meet their burden of showing indefiniteness due to lack of corresponding structure. "The party alleging that the specification fails to disclose sufficient corresponding structure must make that showing by clear and convincing evidence." *TecSec, Inc. v. IBM*, 731 F.3d 1336, 1349 (Fed. Cir. 2013). Defendants did not do so. First, as identified in GTP's opening brief, Defendants' arguments are based on their improper construction of the recited function. *See* Opening Br. at 6; Resp. Br. at 4-5. Second, Defendants disingenuously argue that the '431 Patent excludes control based on position or movement information from the claimed handheld embodiment. Resp. Br. at 4. But the '431 Patent expressly states that the handheld embodiment includes the inventions recited in the patent. "FIG. 8A illustrates control functions of the invention using a handheld device . . . ." '431 Patent at 11:62-64. "The basic idea here is that a device which one holds in ones hand for use in its own right, can also be used with the invention herein to perform a control function by determining its position, orientation . . . with a camera located in the handheld device . . . ." '431 Patent at 12:1-9. The specification then explains that this is done by issuing commands concerning the specific function wanting to be controlled. *See* '431 Patent at 12:42-52 and 12:65-13:7.

2. **"computer means within said housing for analyzing said image to determine information concerning a position or movement of said object"**

Defendants all but concede that their recited function and corresponding structure are incorrect by failing to substantively respond to GTP's opening brief. *Compare* Opening Br. at 7-10 *with* Resp. Br. at 7-8. Thus, the only dispute remaining for the Court is whether this term should be construed according to 35 U.S.C. § 112, ¶6. It should not.

Defendants emphasize and rely on statements made during prosecution of a parent application. *See* Resp. Br. at 6-7 (citing Exs. H-J). But they gloss over the fact that the "computer means" at issue in the parent application was part of a "board game apparatus" and it recited functions not related to the function recited in this term. Ex. F, U.S. Patent No. 7,401,783, Claim 1. Moreover, the claim was further amended before issuance to recite three separate means that are part of the claimed "computer." *See id.* Simply put, patentee's statements are not relevant to whether the claim recites sufficient structure.

Defendants' reliance on the *T-Netix* case is similarly misplaced. *See* Resp. Br. at 6. The court in *T-Netix* recognized that the word "computer" has sufficient structure, and that the computer "must have software to become a functioning computer means." *T-Netix, Inc. v. Glob. Tel\*Link Corp.*, No. 2:01-CV-189, 2003 U.S. Dist. LEXIS 27830, at \*27 (E.D. Tex. Aug. 15, 2003). But, a computer means is "a special case in that the function to a large extent describes the software." *Id.* at \*28. Here, the recited function adequately describes the software necessary to provide sufficient structure to the "computer means." This result is in accord with *Katz*. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011).

Accordingly, the construction of this term is not governed by 35 U.S.C. § 112, ¶6. To the extent the Court disagrees, it should adopt GTP's alternative construction because Defendants' proposed structure contains extraneous structure that is not necessary to perform the recited

function and Defendants have not shown that their proposed structure corresponds to the claimed function. "Under § 112, ¶ 6, a court may not import functional limitations that are not recited in the claim, or structural limitations from the written description that are unnecessary to perform the claimed function." *Wenger Manufacturing, Inc. v. Coating Machinery Systems, Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001). Defendants' construction does both.

### 3. "display function which is controlled"

This term does not recite the word "means," so the presumption is that the term is not construed according to § 112, ¶ 6. Defendants fail to rebut that presumption (other than a conclusory statement). Resp. Br. at 8. Moreover, Defendants improperly attempt to rewrite the claim—the claim does not recite "controlling a display function" as they allege. *See id.* Accordingly, Defendants' construction should be rejected.

### 4. "sensing means associated with said device"

Defendants' position is an attempt to limit the scope of this term to a subset of the embodiments disclosed in the specification (i.e., disclaimer), couched in terms of 35 U.S.C. § 112, ¶6. *See* Resp. Br. at 8-9. Their goal is to limit this term to cameras, contrary to the claim language and the specification. Defendants do not refute the fact that a "sensing means," according to claim 1, that electro-optically senses light, recites sufficient structure to a person of ordinary skill in the art. *See* Resp. Br. at 7-8. Therefore, the construction of this term is not governed by 35 U.S.C. § 112, ¶6. To the extent construction under 35 U.S.C. § 112, ¶6 is necessary, Defendants identify no basis to exclude "electro-optical sensors" from this term. The specification of the '431 Patent is unambiguous: "The invention . . . comprehends a combination of one or more TV cameras (or other suitable electro optical sensors) and a computer to provide various position and orientation related functions of use." '431 Patent at 11:54-58. Moreover, claim 1 recites "electro-optically sensing light" using the claimed "sensing means." '431 Patent at 25:44-46. Defendants do not

articulate any basis for disregarding the claim language and the express teachings of the specifications so as to exclude electro-optical sensors from the scope of this term.

     5.      "means for transmitting information"

Defendants have revised their construction to remove extraneous structure, so the only remaining dispute is whether this term should be limited to a specific type of transmitter, a "cellular transmitter." *See* Resp. Br. at 9. It should not. The '431 Patent does not describe a "cellular transmitter;" rather, it describes the transmitter within a cellular phone. And the only evidence in the record confirms that, at the time of the invention, cellular phones and similar handheld devices included different types of transmitters, such as Bluetooth and Wi-Fi. Ex. E at ¶ 57. They were not limited to cellular transmitters as Defendants assert without <u>any</u> factual support.

     6.      "a light source for illuminating said object" / "light source adapted to direct illumination . . ." / "light source adapted to illuminate a human body part . . ." / "light source in fixed relation relative to the camera . . ."

Defendants concede that their proposed constructions are not merely for clarification, but seek to limit the scope of this term based on alleged disclaimer—all to support non-infringement defenses. *See* Resp. Br. at 10 (". . . the intrinsic record clearly distinguishes displays (which GTP contends meets the claimed 'light source') from light sources."), 21-22. Defendants do not argue (because they cannot) that this term requires construction to assist the jury. Defendants fail to identify a clear and unmistakable disclaimer to support their improper construction. Defendants allege that "the patent distinguishes a light source from a rear projection TV display." Resp. Br. at 10 (citing '431 Patent at 3:23-43). That portion of the specification merely states that, in one embodiment, the claimed invention includes light sources in addition to a rear projection display. '431 Patent at 3:23-43. Defendants' additional citations also fail to show any disclaimer. *See* Resp. Br. at 22. The patents-in-suit do not exclude indirect illumination. Accordingly, the Court should reject Defendants' proposed construction.

> 7. **"wherein said movement is sensed in 3 dimensions" / "wherein said information is obtained in 3 dimensions" / "three-dimensional position"**

Defendants fail to provide any reason to depart from the unambiguous language of the claims. There is no dispute that the claims require sensing or obtaining information in three dimensions. Defendants provide no reason why the Court should replace the term "sensed" with "determined" other than relying on extrinsic evidence. Common to both terms, Defendants fail to provide <u>any</u> intrinsic support to insert the limitation that the three dimensions are perpendicular to each other. *See* Resp. Br. at 11. Accordingly, Defendants' proposed construction should be rejected. *See DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008) ("[A]bsent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis.").

> 8. **"electro-optically sensing" / "electro-optical sensing" / "electro-optical sensor"**

Defendants' response brief fails to provide any substantive analysis to support their position, which seeks to depart from the unambiguous claim language. *See* Resp. Br. at 11, 30. Accordingly, Defendants' proposed construction should be rejected.

> 9. **"oriented to view" / "oriented to view a user" / "oriented to view an object other than the user"**

Defendants seek to construe the first term, "oriented to view," as pretext to their arguments regarding the next two terms based on the *IPXL Holdings* case. "Oriented" and "to view" are simple terms that even a lay juror would understand and apply in determining infringement. Accordingly, the term "oriented to view" does not require construction.

Defendants ask the Court to invalidate claim 1 of the '924 Patent by finding two terms indefinite: "oriented to view a user" and "oriented to view an object other than the user." *See* Resp. Br. at 13-16. In analyzing the claim, the Court will determine "whether the claim leaves the reader 'unclear whether infringement [] occurs when one creates a system that allows the user to

[practice the claimed method step], or whether infringement occurs when the user actually [practices the method step]." *CryptoPeak Sols., LLC v. Lowe's Home Ctrs.*, No. 2:15-cv-1737-RWS-RSP, 2016 U.S. Dist. LEXIS 135666, at *15 (E.D. Tex. Sep. 9, 2016) (Payne, J). (quoting *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005)). As the Court has recognized, "in apparatus claims the issue reduces to whether functional limitations describe the capability of components in apparatus rather than method steps that recite actual use." *Optimum Imaging Techs. LLC v. Canon Inc.*, No. 2:19-CV-00246-JRG, 2020 U.S. Dist. LEXIS 102126, at *78-79 (E.D. Tex. June 11, 2020). To render the claim indefinite, Defendants must show by clear and convincing evidence that the claim is ambiguous as to whether it requires capability or actual performance of the method. *See id.* at *79-80. Defendants have failed to allege, let alone show, the requisite ambiguity by clear and convincing evidence.

The orientation of the first and second cameras in claim 1 of the '924 Patent makes them capable of viewing the user of the handheld device and an object other than the user of the device, respectively. The first camera is "oriented to view a user of the handheld device." The second camera is "oriented to view an object other than the user of the device." The two cameras are capable of viewing the user of the handheld device and an object other than the user of the device, respectively, because they have "non-overlapping fields of view." By having non-overlapping fields of view, the handheld device is capable of viewing a user via the first camera while viewing an object other than the user via the second camera. That the claimed handheld device can be positioned such that the cameras are not viewing a user and object, respectively, is irrelevant because the claim clearly recites capability, not performance of a method step. *See* Resp. Br. at 14-15. Defendants argument incorrectly analyzes the claim as if its elements were "a first camera where the user orients the first camera to view the user" and "a second camera where the user

orients the second camera to view an object other than the user . . . ." But this is not the claim language. "Oriented" is not functional—it is descriptive. It describes the placement of the camera not the actions of a user.

Defendants' incorrect analysis of claim 1 leads to the incorrect assertion that the holding in *Ultimate Pointer* is applicable here. *See* Resp. Br. at 15-16. That case is inapposite because the claims there clearly required performance of a method—pointing a sensing device in specific positions. See *UltimatePointer, L.L.C. v. Nintendo Co.*, No. 6:11-CV-496-LED, 2013 U.S. Dist. LEXIS 74276, at *63-66 (E.D. Tex. May 28, 2013). Accordingly, Defendants have failed to meet their burden to show by clear and convincing evidence that these terms are indefinite under *IPXL*.

**10.     "wherein the gesture is performed by a person other than the user of the handheld device"**

Defendants' position should be rejected as contrary to the law and internally inconsistent. This term is recited in claim 9. Claim 9 depends from claim 6, which recites "wherein the computer is operable to determine a gesture based on at least one of the first camera output and the second camera output." Defendants concede that claim 6 recites capability, not performance of a method, so it is not indefinite under *IPXL*. *See* Resp. Br. at 16-17. Claim 9 does nothing more than further define and narrow the scope of the capability recited in claim 6—the computer must be operable to determine a gesture performed by a person other than the user of the handheld device. It does not require actual performance of a gesture. Accordingly, Defendants have failed to meet their burden to show by clear and convincing evidence that this term is indefinite.

**11.     "a computer within the housing . . ."**

Here again, Defendants incorrectly argue that the term "computer" does not recite sufficient structure, so this term should be construed according to 35 U.S.C. § 112, ¶6. They also rely on the same, non-relevant prosecution history for a "board game apparatus" and recited

functions not related to the function recited in this term. *See* Resp. Br. at 17; Ex. F, Claim 1. The fact remains that the term "computer" has sufficient structure. *See T-Netix, Inc. v. Glob. Tel\*Link Corp.*, No. 2:01-CV-189, 2003 U.S. Dist. LEXIS 27830, at \*27. The claim recites sufficient structure because it also recites how the computer is adapted to perform a control function—it uses at least one of the first camera output and the second camera output. Accordingly, the construction of this term is not governed by 35 U.S.C. § 112, ¶6. The *St. Isidore Research* case cited by Defendants is inapposite because the recited function there did not provide sufficient structure, which is not the case here. *See St. Isidore Research, LLC v. Comerica Inc.*, No. 2:15-cv-1390-JRG-RSP, 2016 U.S. Dist. LEXIS 126866, at \*45-46 (E.D. Tex. Sep. 18, 2016). Accordingly, Defendants have failed to rebut the presumption that construction of this term is not governed by 35 U.S.C. §112, ¶6. This term does not require construction.

12. **"gesture"**

The meaning of "gesture" is clear and unambiguous. Defendants' primary reason for departing from the language of the claims is to support their non-infringement arguments, which is improper. *See Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001). Defendants fail to assert, let alone show, that a lay juror would not understand the term "gesture." *See* Resp. Br. at 19-20. Defendants fail to identify any reason to depart from the plain and ordinary meaning of the term.

13. **"adapted to"**

Defendants find no support for their differing constructions of this unambiguous term. *See* Resp. Br. at 20, 24, 30. Nor do they identify any basis, in the intrinsic record or otherwise, to depart from its plain and ordinary meaning. *See id.* Therefore, Defendants' proposed construction should be rejected.

14. **"a processor adapted to determine the gesture performed in the work volume and illuminated by the light source based on the camera output"**

Defendants assert construction of this term under 35 U.S.C. § 112, ¶6, for no other reason than to attempt to invalidate the claim. *See* Resp. Br. at 22-23. Defendants' position is based on the false premise that "claim 11 does not mention connections between the processor and other claimed components. . . ."—not true. *See* Resp. Br. at 23. Claim 11 specifically states that the processor is connected to the output of the camera. The camera outputs a gesture, performed by a human body part in the work volume, to the processor. And the processor determines the gesture that was performed. Thus, as with the "computer" terms, the recited function provides sufficient structure and the *St. Isodore* case is inapposite. Accordingly, Defendants have failed to rebut the presumption that construction of this term is not governed by 35 U.S.C. §112, ¶6. This term does not require construction.

15. **"work volume above the light source" / "work volume generally above the light source" / "work volume above the camera"**

Defendants concede that the meaning of these terms is clear from the claim language. *See* Resp. Br. at 25. Accordingly, no construction is required.

16. **"forward facing portion" / "forward facing light source"**

Defendants seek to invalidate claims of the '949 Patent on the theory that a person of ordinary skill in the art would be wholly incapable of determining the forward-facing portion of a portable device. *See* Resp. Br. at 27. Noticeably absent from Defendants' brief is any citation to the declarations of their expert, Robert Louis Stevenson, Ph.D, who provided opinions for the majority of their other disputed terms. *See id.* That is because their position is neither reasonable nor supportable. Accordingly, Defendants have failed to meet their burden to show by clear and convincing evidence that these terms are indefinite.

17.   **"the detected gesture is identified by the processing unit apart from a plurality of gestures"**

This term is not indefinite. The "detected gesture" term is a sub-element of the larger processing unit element. The first sub-element of the processing unit element is "detect a gesture . . . ." The next sub-element then states "correlate the gesture detected . . . wherein the detected gesture . . . ." There is nothing unclear from this claim language when read in context. Defendants have failed to showing by clear and convincing evidence that the term is indefinite.

18.   **"the electro-optical sensor" / "the electro-optical sensor field of view"**

Defendants fail to address the unambiguous claim language that provides antecedent basis for these terms. *Compare* Opening Br. at 25-26 *with* Resp. Br. at 28-29. Accordingly, Defendants have failed to meet their burden to show by clear and convincing evidence that these terms are indefinite.

19.   **"processing unit" terms**

Here again, Defendants improperly seek construction under 35 U.S.C. § 112, ¶6, in an attempt to render these terms invalid as indefinite. In this instance, Defendants do not even attempt to analyze the surrounding claim language, which differs for these terms, or to rebut the analysis in GTP's opening brief. *Compare* Opening Br. at 26-30 *with* Resp. Br. at 29-30. Instead, they argue that the mere recitation of a "processing unit" requires construction under 35 U.S.C. § 112, ¶6. But their position is not supported by the law. As with the "computer" terms, these "processing unit" terms are not indefinite because the claim language describes the physical relationship and connections between the recited components of the claimed "portable device." *See* Opening Br. at 26-30. Accordingly, Defendants have not shown by clear and convincing evidence that these terms are indefinite.

Dated: September 8, 2021

Respectfully submitted,

By: */s/ Fred I. Williams*
Fred I. Williams
Texas State Bar No. 00794855
Michael Simons
Texas State Bar No. 24008042
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff*
*Gesture Technology Partners, LLC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 8, 2021 the undersigned caused a copy of the foregoing document to be served on all counsel of record, via the Court's CM/ECF system, pursuant to the Federal Rules of Civil Procedure.

By: */s/ Fred I. Williams*
Fred I. Williams